UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GWENDOLYN JONES, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No. 3:06-0176 |
| | ) JUDGE ECHOLS |
| MID-CUMBERLAND HUMAN | ) |
| RESOURCE AGENCY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM

Pending before the Court is the Motion for Summary Judgment (Docket Entry No. 12) filed by Defendant Mid-Cumberland Human Resource Agency ("MCHRA"). Plaintiff has filed a response in opposition to the motion (Docket Entry No. 17), and Defendant has filed a reply (Docket Entry No. 20).

Plaintiff Gwendolyn Jones, an African American, filed this lawsuit against her former employer, MCHRA, alleging claims for race and age discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination In Employment Act ("ADEA"), 29 U.S.C. § 623 *et seq.*, and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. §4-21-101, *et seq.*[1] She also brought a claim for disability

---

[1] Plaintiff's claims brought under Title VII, the ADEA, and the THRA are analyzed in the same manner so the claims may be considered together. Anthony v. BTR Automotive Sealing Sys., 339 F.3d 506, 514-515 (6th Cir. 2003); Newsom v. Textron Aerostructures, 924 S.W.2d 87, 96 (Tenn. Ct. App. 1995).

1

discrimination under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and a common law claim of retaliatory discharge for filing a worker's compensation claim. In her response to MCHRA's motion for summary judgment, Plaintiff concedes that she lacks proof to support her ADA claim. Thus, the Court will not discuss the ADA claim, and MCHRA is entitled to summary judgment on that claim.

## I. FACTS[2]

MCHRA is a nonprofit, tax-exempt 501(c)(3) organization that has been in existence in middle Tennessee since 1974. Its purpose is to administer a variety of programs to serve elderly and young citizens in a twelve-county area. For financial support MCHRA relies on government grants and contracts, the United Way, and private donations. MCHRA employs approximately 250 individuals. The less MCHRA spends on the administrative level, the more services it can provide.

MCHRA employed Plaintiff as Receptionist on August 13, 2001. Plaintiff's duties included answering the telephone, handling the

---

[2]In its reply brief, MCHRA complains that Plaintiff denied some of MCHRA's statements of undisputed material fact without providing record citations in support of the denials. While Plaintiff's practice is a violation of Local Rule 56.01(c) and Plaintiff's attorney is admonished to comply with Local Rule 56.01(c) in future cases, the Court carefully reviewed the entire summary judgment record and does not rely solely on the citations provided or omitted by either party.

mail, making bank deposits, and scanning numerous newspapers for articles of interest to MCHRA.

In 2004 MCHRA was in severe financial difficulty. MCHRA's Executive Director, Jane Hamrick, and others affiliated with MCHRA approached AmSouth Bank to request a continuation of a line of credit to keep MCHRA afloat, which was ultimately granted. (Docket Entry No. 15-6, McKoy Aff. ¶¶ 3-6.) As part of the request, MCHRA proposed a number of agency-wide cost-cutting measures, including the restructuring of employees and elimination of staff positions. All told, Hamrick proposed cutting approximately $266,966.00 to bring costs in line. Hamrick attests that her cost-cutting efforts included the lay-off of an Assistant Program Director, a Technical Assistant, a Registered Nurse, and Plaintiff's Receptionist position. Overtime was cut, management hours were reduced, positions were reduced from full-time to part-time, and a transportation fare increase was proposed. (Docket Entry No. 15-4, Hamrick Aff. ¶ 10.)

Further, Hamrick attests that MCHRA determined after substantial analysis that the Receptionist position was not cost-effective and the best use of the funds was creation of an Executive Secretary position. Hamrick asked Plaintiff to keep track of the number of telephone calls that came in each day. Upon reviewing the phone log, Hamrick decided that an automated telephone system would be more effective and she had one installed.

3

MCHRA also installed a door bell system for visitors, and various staff members now greet visitors when they arrive. (Id. ¶¶ 11-12, 14.) MCHRA "divvied up" the responsibilities for mail and other duties. The new position of Executive Secretary was posted on a bulletin board at MCHRA from June 18 through June 25, 2004, and the position was advertised in the Tennessean newspaper. (Docket Entry No. 15-3.)

On the morning of June 25, 2004, Hamrick and Executive Assistant Kathie Tharpe met with Plaintiff, who was then 68 years old, to terminate her employment as Receptionist. They told Plaintiff her job was being eliminated due to restructuring because of serious financial problems, (Docket Entry No. 15-9, Jones Depo. at 87), and that a new position of Executive Secretary was being created to better address MCHRA's needs. According to them, Plaintiff was told that she had done nothing wrong, but MCHRA's needs had changed and her position could no longer be justified in light of financial concerns. Also according to Hamrick and Tharpe, Plaintiff stated that she had been expecting this decision for awhile because Hamrick had asked Plaintiff to keep track of daily phone calls. Plaintiff stated she did not know the Executive Secretary position was posted.[3] Hamrick and Tharpe reminded

---

[3] Plaintiff testified at her deposition, however, that she knew the Executive Secretary position was posted because Chris White and Mary Roberts told her it was and they said to Plaintiff, "'Well, Gwen, it can't be your job, because you haven't received a notice

4

Plaintiff that the job was posted in the employees' break room, she could apply for the position if she wished, and she would be considered equally with other applicants. Both Hamrick and Tharpe contend that neither Plaintiff's age nor race played a factor in the decision to eliminate the Receptionist position. (Hamrick Aff. ¶¶ 5, 14-16; Docket Entry No. 15-5, Tharpe Aff. ¶¶ 4-8.) Hamrick reiterated at her deposition that Plaintiff's work performance was not at issue, and neither age, race nor the filing of a worker's compensation claim had anything to do with Plaintiff's employment termination. (Docket Entry No. 15-10, Hamrick Depo. at 37-38.)

Plaintiff did not apply for the Executive Secretary position. (Hamrick Aff. ¶ 17; Tharpe Aff. ¶ 8; Jones Depo. at 55, 58.) MCHRA admits Plaintiff was a good employee and that she was qualified for the Executive Secretary position. (Docket Entry No. 15-10, Hamrick Depo. at 15-16; Docket Entry No. 13, Memorandum of Law at 8.) Plaintiff attests that, although the Executive Secretary position was posted, she had no idea her job of Receptionist was being eliminated until she was terminated. Therefore, she did not make any formal application for the Executive Secretary position, and no one told her she could apply. She also testified that no one told her she could not apply. (Docket Entry No. 19, Jones Aff. ¶ 10; Docket Entry No. 15-8, Jones Depo. at 58-59.) Plaintiff attests

---

or anything, have you?' I said, 'No.'" (Docket Entry No. 15-8, Jones Depo. at 34.)

that no other jobs were offered to her at her termination. (Jones Aff. ¶ 11.) Hamrick testified that "[g]enerally, the employee would express an interest[,]" in a posted job and "personnel policy states that it would be appropriate for an existing employee to give a letter of interest and state what their qualifications [are] or how they feel their job performance would allow them to do the job they might be interested in." (Hamrick Depo. at 33.) Plaintiff insisted on finishing the June 25 work day, which she was allowed to do, and she received severance pay of $1,000. (Jones Depo. at 55, 59.) Plaintiff admitted that Tharpe and Brenda Head provided her with positive letters of recommendation. (Jones Depo. at 55-56.)

MCHRA hired a 29-year old Caucasian female, Emily Fleck, for the Executive Secretary position. During her deposition, Plaintiff testified that she "was replaced by a young, white woman," (Jones Depo. at 30, 32), although Plaintiff now admits that Fleck was not hired as a Receptionist and that Fleck was hired as an Executive Secretary with different job responsibilities than those of the Receptionist position. (Docket Entry No. 18, Concise Statement of Material Facts ¶¶ 25-26.) Plaintiff claims that she was better qualified than Fleck for the Executive Secretary position--"a job that Plaintiff had no chance of applying for or getting an interview[,]"--due to Plaintiff's years of experience in the insurance industry. (Jones Aff. ¶¶ 3, 11; Response to Statement of

6

Material Fact ¶ 24.) The job descriptions for the Receptionist position and the Executive Secretary position are different. (Docket Entry No. 15-2.)

In March 2003, Plaintiff had surgery on her left hand for carpal tunnel syndrome. She claims that upon return to work she was made to perform work outside of her physician's restrictions. (Jones Aff. ¶ 9.) Three weeks before her termination, Plaintiff gave written notice to MCHRA that she would need time off work in August 2004 for a similar surgery on her right hand. (Jones Aff. ¶ 5; Jones Depo. at 16-17.) Plaintiff attests that her worker's compensation attorney inquired as to why she was not receiving temporary benefits, but Plaintiff does not explain to whom the attorney directed this question. (Jones Aff. ¶ 6.) On June 25, 2004, the day Plaintiff's employment was terminated, Plaintiff's attorney filed a lawsuit seeking worker's compensation benefits. (Id. at ¶ 7.) Plaintiff testified at her deposition that "the lawyer was filing a work comp claim, but the work comp claim did not go into the court until the same day I was terminated, so I have no knowledge of what was said or not said about the work comp." (Jones Depo. at 18.)

## II. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of

law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. ANALYSIS

**A. Race and age discrimination claims**

Plaintiff has not produced any direct evidence of race or age discrimination. Therefore, she must prove her claims through circumstantial evidence by application of the familiar burden-shifting formula of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Although Plaintiff in her Memorandum attempts to characterize this case as raising claims of failure to hire or to promote based on the impermissible factors of race or age, the Court agrees with MCHRA that the case must be analyzed as a reduction in force ("RIF") case. Plaintiff was already employed by MCHRA, and she did not apply for the newly-created Executive Secretary position. Thus, to establish a *prima facie* case of race or age discrimination due to the elimination of her position of Receptionist, Plaintiff must first establish the first three parts of the McDonnell-Douglas test: (1) she was part of a protected class (i.e., age forty or over, minority race); (2) she was qualified to perform the job; and (3) she was discharged. Plaintiff satisfied each of these three factors, as MCHRA concedes.

Because this is a RIF case, however, Plaintiff must also produce "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out plaintiff for discharge for impermissible reasons." Barnes v. GenCorp Inc.,

9

896 F.2d 1457, 1465 (6th Cir. 1990); Gragg v. Somerset Tech. College, 373 F.3d 763, 767 (6th Cir. 2004); Jones v. Fluor Fernald, Inc., 2006 WL 3780308 at *2 (6th Cir. 2006) (unpublished). The critical issue in a RIF case is whether the Plaintiff has produced sufficient evidence to permit the factfinder to believe that the employer intentionally discriminated against the Plaintiff because of age or race. Gragg, 373 F.3d at 767-768. Plaintiff can satisfy the fourth requirement if she demonstrates that a comparable non-protected person was treated better. Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 350 (6th Cir. 1998).

Plaintiff has not presented any proof that she was impermissibly singled out for job elimination because of her age or race, that MCHRA intentionally discriminated against her based on age or race, or that a comparable non-protected employee of MCHRA was treated better than she was at the time of the reduction in force. See LaGrant v. Gulf and Western Mfg. Co., 748 F.2d 1087, 1090 (6th Cir. 1984) ("[t]he mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a prima facie case of age discrimination"). Plaintiff would not prove a *prima facie* case even if she demonstrated that younger, Caucasian persons were retained in other jobs which the Plaintiff was qualified to perform, a point she has not attempted to prove. See id. And although Plaintiff initially testified that she was "replaced" in

10

the Receptionist position by Emily Fleck, a 29-year old Caucasian, Plaintiff has now retreated from that position in the hope of turning this into a failure-to-hire or failure-to-promote case. (Docket Entry No. 18, Plaintiff's Response to Statement of Material Fact ¶ 24; Docket Entry No. 17, Plaintiff's Memorandum of Law at 5-6.) Fleck did not replace Plaintiff, as Plaintiff now concedes. Fleck was hired for the Executive Secretary position, which involved duties different from those assigned to Plaintiff in her Receptionist position.

Even if Plaintiff could demonstrate a *prima facie* case of age or race discrimination, MCHRA has met its burden to show a legitimate, non-discriminatory reason for eliminating Plaintiff's job. It is undisputed that MCHRA was in financial straits in 2004 and that cost-cutting measures were necessary.

In the face of this legitimate, non-discriminatory reason for eliminating the Receptionist position, Plaintiff has not produced any evidence of pretext. See <u>Wexler v. White's Fine Furniture, Inc.</u>, 317 F.3d 564, 576 (6th Cir. 2003) (observing plaintiff must show proffered reason had no basis in fact, did not actually motivate defendant's challenged conduct, or was insufficient to warrant the challenged conduct). Plaintiff alleges that she possessed qualifications MCHRA should have considered and that MCHRA should have chosen her over Fleck for the Executive Secretary position. Putting aside that Plaintiff did not apply for the

11

Executive Secretary position, to survive the summary judgment motion Plaintiff must show that a reasonable jury could conclude that the actual reason offered by MCHRA for the RIF was a mere pretext for unlawful age and race discrimination, not that other reasonable decision-makers might have retained the Plaintiff. See Rowan v. Lockheed Martin Energy Systems, Inc., 360 F.3d 544, 550 (6th Cir. 2004. "In this case no reasonable jury could reach that conclusion."

The Court is sympathetic to the fact that Plaintiff performed her job well since 2001. However, to prevail "Plaintiff must come forward with some evidence to rebut the presumption that the reduction in the workforce is the legitimate reason for her termination. She has not done so." Jones, 2006 WL 3780308 at *2. The Court finds nothing in the record to suggest that the executive staff of MCHRA decided to eliminate the position of Receptionist because of a desire to discriminate intentionally against the Plaintiff based on her race or age. Absent such evidence, summary judgment in favor of Defendant on Plaintiff's Title VII, ADEA and THRA claims is proper.

**B. Retaliatory discharge claim**

Because the Court will grant summary judgment in favor of MCHRA on all federal claims brought by Plaintiff, the Court will decline to exercise supplemental jurisdiction over Plaintiff's remaining state common law claim alleging retaliatory discharge for

12

filing a worker's compensation lawsuit. That claim will be dismissed without prejudice for lack of supplemental jurisdiction under 28 U.S.C. § 1367(c)(3). See Swiecicki v. Delgado, 463 F.3d 489, 503 (6th Cir. 2006)(observing usual course is for district court to dismiss state-law claims without prejudice if all federal claims are disposed of on summary judgment).

## IV. CONCLUSION

MCHRA is entitled to summary judgment on Plaintiff's claims of age, race and disability discrimination. Thus, the motion for summary judgment will be granted on those claims in favor of MCHRA. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state common law claim for retaliatory discharge, so that claim will be dismissed without prejudice. 28 U.S.C. § 1367(c)(3). MCHRA's motion for summary judgment will be denied on the retaliatory discharge claim.

An appropriate Order shall be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

13